UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BENNIE GRAY, JR., : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:19cv1869 (KAD) |
| : | |
| BANSLEY/ANTHONY/BURDO LLC : | |
| et al., : | |
|     Defendants. : | |

## **INITIAL REVIEW ORDER**

On November 22, 2019, the *pro se* plaintiff, Bennie Gray, Jr., presently incarcerated at Corrigan-Radgowski Correctional Facility, filed this complaint pursuant to, *inter alia,* 42 U.S.C. § 1983 against the law firm of Bansley/Anthony/Burdo LLC ("Bansley Law Firm"), Michael Boardman, George Blair III, the Chairman of the Board of Pardons and Paroles, and the Commissioner of the Department of Correction ("DOC").[1] Compl. [ECF No. 1]. He alleges violation of his rights under the Fourteenth Amendment and Sixth Amendment to the United States Constitution, a violation of his due process rights under the Connecticut Constitution Article First, § 8, and a state law claim of legal malpractice against the Bansley Law Firm and Attorneys Boardman and Blair. He sues the defendants in their official and individual capacities, and he seeks damages and declaratory relief. For the following reasons, the Court will permit Gray's complaint to proceed only on the Fourteenth Amendment procedural due process claim against the Chairman of the Board of Pardons and Paroles in his individual capacity for damages. The Court exercises its discretion to decline supplemental jurisdiction over the state law claims of malpractice and the alleged violation of the Connecticut Constitution, Article I, § 8.

---

[1] Gray is proceeding *in forma pauperis.*[EFC. No. 6].

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ALLEGATIONS**

On May 9, 2018, Gray, who was then a parolee[2], was arrested by the New London Police on drug charges. Compl. at ¶¶ 12-13 [ECF No. 1]. He was released by the New London Police to

---

[2] In an earlier case, *Gray v. Nordstrom*, 18cv1402 (KAD), Gray alleged that he was arrested on September 5, 2017, while on parole and that his parole was revoked after a revocation hearing. *Gray v. Nordstrom*, No.

Parole Officer Robert Johnson on a $5,000 non-surety bond and remanded to custody at Corrigan-Radgowski pending parole revocation proceedings. *Id.* As a parolee, he was not allowed to be released or bonded out pursuant to DOC Administrative Directive § 11.3. *Id.* at ¶ 13.

On May 11, 2018, Gray was presented with a Parole Violation Report by Parole Officer Robert Johnson. *Id.* at ¶ 14. The report noted that Gray had no misconduct reports against him by Parole. *Id.* He was remanded due to the pending charges against him. *Id.* He signed a document indicating that he wished to have a Preliminary Hearing and a Final Revocation Hearing. *Id.* at ¶ 15.

Two weeks later, Gray was brought to a Preliminary Hearing. *Id.* at ¶ 16. Gray asked that he be provided with counsel after he became aware that he would not be provided with the police report against him. *Id.* His request was granted, and the hearing was postponed. *Id.*

The Inmate's Legal Aid Program run by the Bansley Law Firm was assigned to handle his parole violation. *Id.* at ¶ 17. In June 2018, Attorney Michael Boardman was assigned to Gray's case by the Bansley Law Firm. *Id.* at ¶ 18. He provided Gray with the police report and agreed to speak with witnesses in preparation for the revocation proceedings. *Id.*

Gray filed for a speedy trial in his criminal matter. *Id.* at ¶ 19. He reached out to Attorney Boardman by telephone to determine the status of his revocation hearing and to seek assistance with another claim regarding his medical care. *Id.* Attorney Boardman advised him to call him when his criminal matter was wrapped up. *Id.*

---

3:18CV1402(KAD), 2019 WL 2193463, at *2 (D. Conn. May 21, 2019). Gray was incarcerated from September 5, 2017, until March 16, 2018. *See* No. 3:18CV1402 (KAD), ECF No. 27 at 5 at ¶ 8.

Prior to starting his criminal trial, on March 19, 2019, Attorney George Blair III of the Bansley Law Firm contacted Gray to inform him that he was taking over Gray's revocation matter. *Id.* at ¶ 20.

On April 8, 2019, Gray was found guilty in his criminal matter. *Id.* at ¶ 21. Although he reached out to the Inmates' Legal Aid Program several times, no one would respond to his requests to speak to counsel. *Id.* Gray threatened to file a complaint against the Program. *Id.*

Following his conviction, Gray wished to bring a constitutional violation to the court's attention to set aside the jury's verdict. *Id.* at ¶ 22. He filed a motion for a new trial, *pro se*, in accordance with the Connecticut Practice Book § 42-53. *Id.*

Since Gray had no access to legal material and he believed he was not being properly advised by his standby counsel, he sought assistance from the Inmate's legal Aid Program so that he could receive caselaw and shepardize the issue he wished to bring to the court's attention on his motion for a new trial. *Id.* at ¶ 23.

On May 22, 2019, Gray spoke with Attorney Blair about his conviction and the issue he wished to bring to the Court's attention in his motion for new trial. *Id.* at ¶ 24. Attorney Blair agreed to send caselaw for Gray's sentencing date on July 8, 2019. *Id.* Gray sent follow-up letters to Attorney Blair on May 28 and in early June 2019, requesting the caselaw. *Id.* at ¶ 25. However, Attorney Blair sent him the caselaw two days after he had been sentenced. *Id.*

On June 26, 2019, Gray wrote to Corrigan Warden Corcella to request permission to have access to the legal books in the library before his court appearance. *Id.* at ¶ 26. However, his request was denied. *Id.* Gray alleges that the denial of access to the law books frustrated his ability to preserve his right to appeal the denial of his motion for judgment of acquittal. *Id.* at ¶

51. Specifically, he was not able to conduct legal research prior to his trial[3] that would have alerted him to the waiver rule articulated in *State v. Rutan*, 197 Conn. 438, 440 (1984) and *State v. Booker*, 28 Conn. App. 34, 41–42 (1992):

> Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the state's case.

*Id.* at ¶¶ 54-60. At his trial, the court ordered Gray to proceed with his defense without ruling on Gray's motion for judgment of acquittal which he made at the end of the prosecution's case in chief. *Id.* at ¶ 52. Prior to moving forward with his defense, Gray requested to speak with his standby counsel, who showed him Connecticut Practice Book § 42-42, which states:

> If the motion is made after the close of the prosecution's case-in-chief, the judicial authority shall either grant or deny the motion before calling upon the defendant to present the defendant's case-in-chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so.

*Id.* at ¶ 53.

Standby counsel did not alert Gray or the trial court to the waiver rule, which put Gray in jeopardy of losing his appeal rights if he presented evidence in his defense. *Id.* at ¶ 58.

Gray appealed his criminal conviction, and an appeal bond was set on July 8, 2019.[4] *Id.* at ¶ 27.

---

[3] As Gray's trial had concluded prior to the date on which he alleges he sought access to legal research in the library, it is unclear how the denial of this request impacted the trial and his knowledge of the so-called waiver rule.
[4] According to the DOC website, on July 8, 2019, Gray received a twelve-year sentence. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record.").

5

On July 15, 2019, Gray filed a grievance related to the denial of his request to Warden Corcella. *Id.* at ¶ 28. After this request was denied, Gray appealed that decision to exhaust his administrative remedies. *Id.*

Although he did not waive his rights to a Preliminary or Final Parole Revocation Hearing, Gray did not receive either of these hearings during the one year and five months he was incarcerated at Corrigan. *Id.* at ¶¶ 29, 30, 31.

Gray alleges that on October 18, 2019, he "discharged" from the case[5] without having a preliminary or revocation hearing. *Id.* at ¶¶ 29, 32. He alleges that he was held one year and five months without being allowed to post bond. *Id.* at ¶ 38. He alleges that he was punished by having his "conditional liberty" taken without due process. *Id.* at ¶ 35.

**DISCUSSION**

Gray alleges federal claims asserting violation of his Sixth Amendment and Fourteenth Amendment rights.

**Fourteenth Amendment**

Plaintiff's complaint raises Fourteenth Amendment due process and equal protection concerns.

Procedural Due Process

Parole revocation deprives a parolee of the "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "Where a state provides a system of parole, it may not revoke a person's parole without

---

[5]The Court construes this allegation to mean that he discharged from the sentence for which he had been on parole and with respect to which he had been remanded.

6

providing minimum due process protections." *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 652 (2d Cir. 1993). Prior to the revocation of parole, a parolee is entitled to the due process protections of (1) notice of the charges against him; (2) a preliminary probable cause hearing within a reasonable period of time conducted by a neutral hearing officer; and (3) a revocation hearing at which the parolee may confront witnesses. *Morrissey*, 408 U.S. at 486-89; *Calhoun*, 999 F.2d at 652.

The plaintiff's allegations are sparse. However, for purposes of this initial review, he has alleged sufficient facts to establish that the Chairman of the Board of Pardons and Paroles violated his Fourteenth Amendment due process rights based on the alleged failure to provide him with either a preliminary hearing or a revocation hearing prior to effectively revoking his parole and holding him until he discharged from the underlying sentence.[6] This claim shall advance beyond initial review.

Substantive Due Process

Gray's complaint does not specifically allege a claim of substantive due process, and the Court is unclear whether he intends to do so. He alleges that he was being "punished" by revocation of his "conditional liberty" without due process, *See* ECF No. 1 at ¶ 35, and that the Chairman of the Board of Pardons and Paroles and the DOC Commissioner violated his right to Fourteenth Amendment due process because he was denied the right to bail based upon DOC Administrative Directive, § 11.3 (6)(b).[7] *See* ECF No. 1 at ¶ 40 & (Relief Requested) at ¶ 2.

---

[6] Neither a private attorney nor the Inmates' Legal Assistance Program may be considered to be state actors for purposes of Section 1983. *See Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at *5 (D. Conn. Apr. 16, 2015). While it is not clear, to the extent Gray asserts claims pursuant to Section 1983 against the Bansley Law form or its attorneys, those claims are dismissed.

[7] Administrative Directive § 11.3 provides: "Offenders remanded to actual custody for violating any condition of

However, a parole violator does not have a federal or state constitutional right to be released on bail while awaiting a revocation hearing. *Galante v. Warden,* 573 F.2d 707, 708 (2d Cir.1977); *Liistro v. Robinson*, 170 Conn. 116, 122, 130 (1976). Accordingly, Gray's claims of substantive due process premised on the defendants' alleged denial of his right to be released on bail are not plausible and are dismissed.

Equal Protection

The Fourteenth Amendment Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted). Gray makes no claim of disparate treatment based upon race, national origin, religion or any other "suspect class." Instead, Gray alleges that parole is a conditional supervised release which is similar to probation in the revocation process, yet probation violators are not

---

their release shall have no right to bail and shall be detained pending further order of the Board of Pardons and Paroles or the Department's Division of Parole and Community Services."

subject to the same rule denying the right to bail after an alleged violation. ECF No. 1 at ¶¶ 41-42. This claim fails because status as either a probationer or parolee is not an "impermissible consideration" as it does not implicate a suspect class or an otherwise recognized "protected right."

Indeed, in *Liistro*, the Connecticut Supreme Court determined that the differences between probation and parole provided a rational basis for a statutory scheme permitting probationers to be free on bail pending a violation hearing but did not permit parolees to post bail while awaiting a parole revocation hearing. 170 Conn. at 129. The Court reasoned that the differential treatment was justified because the "[s]ubstantial differences in status" between a probation and parole violator. *See id* at 128-129 ("probationer is subject to judicial control and 'the court may modify or enlarge' the conditions of probation. On the other hand, a parolee is subject not to judicial control but to the administrative control of the parole board. Probation is granted because the sentencing court is of the opinion that confinement is not necessary for the protection of the public and probation provides a better chance of rehabilitation, whereas parole is technically a custody status.") (citations omitted); *see also Samson v. California*, 547 U.S. 843, 861-62 (2006) ("parole differs from probation insofar as parole is meted out in addition to, not in lieu of, incarceration[,] ... [a]nd, certainly, parolees typically will have committed more serious crimes ... than probationers.").

Alternatively, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an

9

extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Vill. of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd.*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Construing the Complaint liberally, a class of one equal protection claim would need to include allegations that Gray is similarly situated to all probation violators, but treated differently under circumstances giving rise to an inference that he was intentionally singled out by the state actors "for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose is … all but certain." *Id.* To the extent Gray brings a class of one equal protection claim, the claim fails.[8] First, Gray's allegations do not "show an extremely high degree of similarity between [Gray] and the persons to whom [h]e compare [himself]" here, probation violators. Therefore, there are no allegations to suggest an inference that no rational basis exists for the difference in the alleged unequal treatment between Gray and those who are

---

[8]Gray supports this claim citing to cases which discuss the procedural due processf rights of parolees, probationers and those on supervised release and recognizing that such rights are substantially the same. *See United States v. Kelley*, 446 F.3d 688, 690-91 (2006) ("*Morrissey* and *Gagnon* involved parole and probation revocations, respectively, but their holdings apply to supervised release revocations as well."); *U.S. v. Hall*, 419 F.3d 980, 985 n.4 (4th Cir. 2005) (noting that parole, probation, and supervised release are constitutionally indistinguishable and analyzed in same manner); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (noting no distinction in guarantee of due process between the revocation of parole and the revocation of probation). However, these cases do not compel the identical treatment of probation and parole violators in the context of the Fourteenth Amendment Equal Protection Clause. They are inapposite.

alleged to have violated probation. The Fourteenth Amendment equal protection claim is dismissed.

**Access to Legal Research**

Gray alleges that his Sixth Amendment and Fourteenth Amendment rights were violated when Warden Corcella failed to provide him with access to legal research. ECF No. 1 at ¶ 60. He asserts that his efforts to defend himself in his criminal case were hindered by the Commissioner's failure to provide research facilities or an alternative way to do meaningful legal research. *Id.* at ¶ 4.

It is well established that inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)).[9] In Connecticut, legal assistance in state criminal matters is provided by the Office of the Public Defender, while legal assistance in civil matters relating to conditions of confinement is provided by the Inmate Legal Aid Program. *Kaminski v. Semple*, No. 3:19-CV-143 (SRU), 2019 WL 1454950, at *3 (D. Conn. Apr. 2, 2019) *aff'd*, No. 19-973-CV, 2019 WL 6904145 (2d Cir. Dec. 18, 2019). If an inmate chooses to forgo that assistance and represent himself, the DOC has no obligation to provide other legal services to assist the inmate. *Santiago v. Whidden*, No. 3:10-cv-1839 (VLB), 2012 WL 668996, at *4 (D. Conn. Feb. 29, 2012) (citing *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) ("a defendant who declines appointed counsel and instead invokes his constitutional right to self-representation ... 'does not

---

[9]The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment Due Process Clauses, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

have a right to access to a law library'")); *see also Spates v. Manson*, 644 F.2d 80, 85 (2d Cir. 1981) (Sixth Amendment right to represent oneself "does not carry with it a right to state financed library resources where state-financed legal assistance is available."). Thus, Gray cannot establish a plausible constitutional violation based on denial of his request for access to legal research because the complaint's factual allegations establish that he chose to represent himself and he had standby counsel in his criminal proceeding. The access to courts claim is dismissed under 28 U.S.C. § 1915A(b)(1).

**Supplemental Jurisdiction**

A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Supplemental jurisdiction can only exist where the state and federal claims share a "common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "[A] sufficient relationship will be found if the facts pertinent to the federal and state claims substantially overlap or if 'presentation of the federal claim necessarily [would bring] the facts underlying the state claim before the court.'" *BLT Restaurant Group LLC v. Tourondel*, 855 F. Supp. 2d 4, 10 (S.D.N.Y. 2012) (quoting *Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 704).

Gray's Fourteenth Amendment due process claim and his state law malpractice and Connecticut constitutional claims all arise in the context of, and during, Gray's confinement after

his alleged parole violation. It is not clear to the Court that the state law and federal claims arise from a common nucleus of operative facts for purposes of § 1367(a). The record is not adequate for the Court to make this determination with any certainty. However, even assuming the state law claims fall within the scope of §1367(a), which appears doubtful, the court exercises its discretion to decline supplemental jurisdiction under section 1367(c).

Under § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Additionally, a district court should not decline to exercise supplemental jurisdiction under section 1367(c) unless it also determines that to exercise such jurisdiction would not promote economy, convenience, fairness, and comity. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 214 (2d Cir. 2004)).

Specifically, the Court declines jurisdiction over the claim of violation of Connecticut Constitution, Article 1, § 8 under section 1367(c)(1). Because the Connecticut Supreme Court has not recognized a private right of action under this provision, Gray's claim seeking relief based on its violation raises novel issues of state law that are more appropriately resolved by the state court.[10] *See Gothberg v. Town of Plainfield*, 148 F. Supp. 3d 168, 187–88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article first,

---

[10]Additionally, it appears the Supreme Court would have to overrule its holding in *Liistro* in order for Gray to prevail, even if the Supreme Court recognized a private right of action.

§ 8); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental jurisdiction over novel and undeveloped state constitutional claims based on Article I, seeking monetary damages and injunctive relief).

The court also declines jurisdiction over the malpractice claims under section 1367(c)(2) because they would substantially predominate over the Fourteenth Amendment claims. "[I]f it appears the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966).

Legal malpractice requires a plaintiff to establish: "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." *Mayer v. Biafore, Florek and O'Neill*, 245 Conn. 88, 92 (1998). Expert testimony is generally required to establish the standard of care for a legal malpractice claim. *See Kuehl v. Koskoff*, 182 Conn. App. 505, 521 (2018) ("expert testimony is necessary in legal malpractice cases in order to establish the standard of care...."). Gray's malpractice claims require him to establish a proof wholly distinct from that related to the Fourteenth Amendment procedural due process claim. Further, Gray's Fourteenth Amendment claim is brought against only the Chairman of the Board of Pardons and Paroles. By contrast, Gray asserts legal malpractice against three defendants, none of whom is liable on the Fourteenth Amendment claim. Thus, Gray's malpractice claims substantially predominate because he must establish liability as to each of the three defendants with evidence concerning the standard of care, causation, and damages that is not relevant to the federal claim. Indeed, the procedural due process claim is very narrow in scope. It is confined to

the circumstances under which Gray was remanded and held until "discharge" having not, allegedly, received due process as required under the Fourteenth Amendment.

For these reasons, with respect to both claims, the court further determines that the Court's exercise of supplemental jurisdiction would not promote the values of judicial economy, convenience, fairness and comity. The state law claims are dismissed without prejudice.

**Declaratory Judgment**

Gray requests a declaratory judgment stating that "[t]he Defendant Chairman of Board of Pardons and Paroles['] failure to give Gray a Preliminary Revocation Hearing and Final Revocation Hearing denied Gray due process in violation of the Fourteenth Amendment to the U.S. Constitution." ECF No. 1 at 8, ¶ 1. He also seeks declaratory judgments stating: "Defendants Chairman of Board of Pardons and Paroles, and Commissioner of Correction unlawfully denied Gray the right to bail in violation of ... the Fourteenth Amendment to U.S. Constitution; *Id.* at ¶ 2; and that "denying parolees bail beyond 30 days is unconstitutional." *Id.* at 3.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation and quotation omitted). However, this exception to Eleventh Amendment immunity "does not

permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* ... to claims for retrospective relief.").

Gray's requests for declaratory judgment stating that the defendants violated his Fourteenth Amendment rights in the past are barred by the Eleventh Amendment and must be dismissed. His request for a declaratory judgment regarding denial of parolees' right to bail beyond 30 days seeks prospective relief, but it bears no relation to the remaining federal due process claim. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010) (requests for injunctive relief are remedies and are dismissed with the underlying claim). Accordingly all requests for declaratory judgment are dismissed.[11]

**ORDER**

The Court enters the following orders:

(1) The case shall proceed against the Chairman of the Board of Pardons and Paroles in his individual capacity for damages on Gray's Fourteenth Amendment procedural due process claim.

The Sixth Amendment claim based on denial of access to legal research against the DOC Commissioner is DISMISSED.

The Fourteenth Amendment Due Process and Equal Protection claims, based on the failure to be released on bail against the Chairman of the Board of Pardons and Paroles and the DOC Commissioner are DISMISSED.

---

[11]Gray's requests for declaratory relief relating to his state law claims are dismissed without prejudice.

All requests for declaratory relief against the Chairman of the Board of Pardons and Paroles and the DOC Commissioner are DISMISSED.

Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction over state law claims of malpractice and violation of Article 1, § 8, and they are DISMISSED without prejudice. The DOC Commissioner, The Bansley Law Firm, Attorney Boardman, and George Blair are all DISMISSED from this action.

Nothing herein shall preclude Gray from seeking to amend his complaint if he believes the Court has misconstrued the allegations regarding his federal constitutional claims.

(2) The clerk shall mail a waiver of service of process request packet containing the plaintiff's complaint and this Initial Review Order to the Chairman of the Board of Pardons and Paroles at 55 West Main Street, Suite 520, Waterbury, Connecticut 06702, on or before **February 11, 2020**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) Defendant Chairman shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If the defendant chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant

may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed on or before **July 21, 2020**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed on or before **August 21, 2020.**

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(11) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 21st day of January 2020, at Bridgeport, Connecticut.

                                              __/s/_____
                                              Kari A. Dooley
                                              United States District Judge